**WINNEMEM WINTU TRIBE, in their tribal and individual capacities; Caleen Sisk Franco; Mark Franco, et al., Plaintiffs,**

v.

**UNITED STATES DEPARTMENT OF the INTERIOR; Bureau of Reclamation; Bureau of Indian Affairs; Bureau of Land Management; United States Forest Service; United States Department of Agriculture; and, in their Individual Capacities, Kristy Cottini and J. Sharon Heywood, Defendants.**

No. Civ. 2:09–cv–01072–FCD EFB.

United States District Court,
E.D. California.

July 16, 2010.

Cheryl B. Kahn, Eric L. Toscano, Eugenia S. Chern, Reed Smith LLP, San Francisco, CA, for Plaintiffs.

Lynn Trinka Ernce, Govt., United States Attorney's Office, Sacramento, CA, for Defendants.

## MEMORANDUM AND ORDER

FRANK C. DAMRELL, JR., District Judge.

This matter is before the court on motions to dismiss plaintiffs' first amended complaint by defendants the United States Department of the Interior ("DOI"), Bureau of Reclamation ("BOR"), Bureau of Indian Affairs ("BIA"), Bureau of Land Management ("BLM"), United States Forest Service ("USFS"), and United States Department of Agriculture ("USDA") (collectively, "the agency defendants") and District Ranger for the Shasta–Trinity National Recreation Area, Kristy Cottini, and Forest Supervisor for Shasta–Trinity National Forest, J. Sharon Heywood (collectively, "the individual defendants"). Defendants move to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6). The Winnemem Wintu Tribe, Caleen Sisk Franco, and Mark Franco ("plaintiffs") oppose defendants' motion. For the reasons set forth below,[1]

---

**1.** Because oral argument will not be of material assistance, the court orders this matter submitted on the briefs. E.D. Cal. L.R. 230(g).

defendants' motion is GRANTED in part and DENIED in part.

## BACKGROUND

Plaintiffs filed their initial complaint on April 19, 2009, asserting various tort claims under the Federal Tort Claims Act ("FTCA") against the agency defendants and against Secretary of the Interior Kenneth Salazar and Secretary of Agriculture Tom Vilsack. (Compl. ¶¶ 2, 43–93.) Plaintiffs also asserted a claim for mandamus and injunctive relief pursuant to 28 U.S.C. § 1361, requesting an order directing the defendants to investigate and report on damage allegedly caused to sites of cultural importance to the Winnemem Wintu Tribe (the "Winnemem") along the McCloud River. (*Id.* ¶¶ 97–98, 101.) Finally, plaintiffs sought a declaratory judgment pursuant to 28 U.S.C. §§ 2201–02 that various actions by the defendants constituted violations of federal, state, and common law. (*Id.* ¶¶ 94–95.) On June 29, 2009, the defendants filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6). The court issued a Memorandum and Order on September 14, 2009, granting in part and denying in part the defendants' motion (the "Order").

In an amended complaint, filed October 14, 2009, plaintiffs reorganized their allegations to assert claims against the agency defendants pursuant to the Administrative Procedures Act ("APA"), 5 U.S.C. § 551 *et seq.*, for alleged violations of various federal statutes and the United States Constitution. (Amend. Compl. ¶¶ 75–146.) Plaintiffs also bring a claim pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), against defendants Cottini and Heywood in their individual capacities, seeking monetary damages for alleged violations of plaintiffs' First Amendment and Fifth Amendment rights. (*Id.* ¶¶ 147–53.)

Plaintiffs allege that the Winnemem are a California Native Tribe recognized by the California Native American Heritage Commission and identify Caleen Sisk–Franco as the current tribal leader of the Winnemem. (*Id.* ¶¶ 43, 47.) However, the Winnemem are not a federally recognized Indian tribe. (*Id.* ¶ 51.) Plaintiffs allege that the U.S. government made an error in 1978 that resulted in the Winnemem's exclusion from the list of Indian tribes eligible to receive federal benefits. (*Id.*) Plaintiffs allege that the Federal Court of Claims had previously recognized the Winnemem's federal status in 1928, 1954, and 1968. (*Id.* ¶ 42, 45.) Plaintiffs also point to federal permits allegedly issued to Caleen Sisk–Franco and the Winnemem to possess eagle feathers and parts as further evidence of previous federal tribal recognition. (*Id.* ¶¶ 47–48.)

In their amended complaint, plaintiffs seek declaratory and injunctive relief for alleged harm resulting from defendants' failure to acknowledge the Winnemem as a federally recognized Indian tribe and for alleged harm to various areas that the Winnemem use as cultural and religious sites. (Amend. Compl. ¶¶ 154–68.)

### A. Nosoni Creek

Plaintiffs allege that the USFS engaged in various actions causing damage to the Nosoni Creek area, a site of cultural importance to the Winnemem, without regard to plaintiffs' protests and in violation of a previous project agreement between the Winnemem and the USFS. (*Id.* ¶¶ 53–55.) Specifically, plaintiffs allege that in 2001, the USFS cut down three ancient "grandfather" grapevines that the Winnemem had used for medicinal purposes for more than 100 years. (*Id.* ¶ 53.) Plaintiffs further allege that the USFS dumped dirt on a "sacred site" without archeological monitoring or guidance and

rendered inaccessible an area for ceremonial storytelling by bulldozing and filling in a vegetated area. (*Id.* ¶¶ 54–55.) In addition, plaintiffs allege that the USFS allowed unmonitored construction and industrial activities that "create biological hazards and disturb natural ecosystems" at the site. (*Id.* ¶ 77.) Finally, plaintiffs allege that the USFS blocked access to the site for religious and ceremonial activities. (*Id.*)

Plaintiffs assert that these actions violate several federal statutes: the Archaeological Resource Protection Act ("ARPA"), 16 U.S.C. §§ 470ee; the National Historic Preservation Act ("NHPA"), 16 U.S.C. § 470f; the American Indian Religious Freedom Act ("AIRFA"), 42 U.S.C. § 1996; and the Religious Freedom and Restoration Act ("RFRA"), 42 U.S.C. § 2000bb–1(b) (*Id.* ¶¶ 79, 131.)

## B. Dekkas Site

In the Dekkas area, plaintiffs allege that in 2005 the USFS ignored an agreement with the Winnemem and cut substantial quantities of old-growth manzanita trees that for centuries had been the only source of wood used for religious and cultural celebrations. (*Id.* ¶ 61.) Plaintiffs allege that the cutting took place in violation of an agreement that an archaeologist and tribal representatives be present. (*Id.* ¶ 62.)

Plaintiffs further allege that in 2006, the USFS facilitated entry by campers, hikers, and others into the Dekkas site by removing a lock from a gate. (*Id.* ¶ 60.) Plaintiffs allege that also in 2006, the USFS ordered the Winnemem to remove all their items from the Dekkas site, including rocks of historical and cultural significance to the Winnemem. (*Id.* ¶ 63.)

Finally, plaintiffs allege that in 2007, the USFS and/or defendant Cottini forbade plaintiffs from using "Cultural Property" at Dekkas, including "an ancient fire pit with rocks that have been used by the Winnemem for hundreds of years," by improperly revoking a special use permit and refusing to issue new permits without cause (*Id.* ¶ 59.) Plaintiffs claim that defendants' actions in connection with the Dekkas area interfered with plaintiffs' use and enjoyment of a site that has religious significance for the Winnemem. (*Id.* ¶¶ 59–63.)

Plaintiffs assert that defendants' actions in connection with the Dekkas area violate the ARPA, NHPA, AIRFA, RFRA, and the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4321. (*Id.* ¶¶ 83, 131.)

## C. Coonrod Cultural Site

Plaintiffs allege that the USFS allowed campers, hikers, and hunters to intrude into the Coonrod Cultural Site, an area of ceremonial importance to the Winnemem. (*Id.* ¶ 64.) Plaintiffs further allege that the USFS failed to prevent cattle from trampling over a fire pit of religious significance to the Winnemem, despite a 2005 request by the Winnemem that the USFS replace or rebuild a fence around the site. (*Id.*) In addition, plaintiffs allege that defendants permitted recreational vehicles to drive into the site. (*Id.* ¶ 89.) Plaintiffs also allege that defendants refused to take steps to preserve cultural artifacts and that defendants arbitrarily denied requests to expand the boundaries of the Coonrod site to encompass newly discovered cultural resources. (*Id.*)

Plaintiffs assert that these alleged actions and omissions violate the ARPA, NHPA, AIRFA, and RFRA. (*Id.* ¶¶ 89, 131.)

## D. Gilman Road

Plaintiffs allege that the USFS violated an agreement regarding Gilman Road by causing medicinal plants to be cut and

sprayed with herbicides. (*Id.* ¶ 65.) Plaintiffs further allege that the USFS failed to disclose to the Winnemem projects that damaged cultural and religious sites or to take all possible steps to mitigate the damage. (*Id.* ¶ 95.)

Plaintiffs assert that these alleged actions and omissions violate the ARPA, NHPA, and NEPA. (*Id.*)

## E. Buck Saddle Prayer Site

Plaintiffs allege that the USFS built a recreational bike trail through the Buck Saddle Prayer Site without disclosing the project in advance or taking sufficient measures to protect the site. (*Id.* ¶ 101.) Defendants further allege that the USFS breached a Memorandum of Understanding by reorienting rocks, (*Id.* ¶ 66), and that the USFS converted a prayer rock sacred to the Winnemem into a ramp for dirt bikes. (*Id.* ¶ 101.) In addition, plaintiffs assert that defendants have "enabl[ed] ongoing degradation" of ecosystems, natural resources, and archaeological sites, and permitted general access to the area without taking sufficient measures to protect artifacts. (*Id.* ¶ 101.)

Plaintiffs assert that these alleged actions and omissions violate the ARPA, NHPA, NEPA, AIRFA, and RFRA. (*Id.* ¶¶ 101, 131.)

## F. Panther Meadow

Plaintiffs allege that the USFS allowed damage to Panther Meadow to occur by permitting visitors to scatter human cremation remains and to otherwise damage a site of religious and cultural importance to the Winnemem and by failing to close Panther Meadow or to regulate public access as necessary to prevent damage to the site's resources. (*Id.* ¶ 67, 107.)

Plaintiffs assert that the these alleged actions and omissions violate the ARPA, NHPA, and NEPA. (*Id.* ¶ 107.)

## G. Shasta Reservoir Indian Cemetery

Plaintiffs allege that defendants permitted damage to occur to the Shasta Reservoir Indian Cemetery and interfered with plaintiffs' use of the cemetery, including the right to use the cemetery for burials. (*Id.* ¶ 113.) Plaintiffs further allege that the DOI, BLM, and BOR have not responded to Freedom of Information Act requests for the title and deed and trust documents for the cemetery. (*Id.* ¶ 69.)

Plaintiffs assert that these alleged actions and omissions violate the ARPA, NHPA, and NEPA. (*Id.* ¶ 113.)

## H. Rocky Ridge Village Site

Plaintiffs allege that defendants have permitted campers to park recreational vehicles at the Rocky Ridge Village Site in ceremonial areas that the Winnemem use for religious worship. (*Id.* ¶ 119.) Plaintiffs further allege that the USFS intends to permit the construction of a parking lot on a village and burial site, despite objections by the Winnemem, (*Id.* ¶ 71.), and that defendants have failed to engage in pre-project consultation in connection with the planned parking lot. (*Id.* ¶¶ 119–20.)

Plaintiffs assert that these alleged actions and omissions violate the NHPA, NEPA, and the Native American Grave Protection and Repatriation Act ("NAGPRA"), 25 U.S.C. §§ 3002, 3013 (*Id.* ¶¶ 119, 121.)

## I. Shasta Dam

Finally, plaintiffs allege that defendants are evaluating proposals to raise the level of Shasta Dam, and assert that this project would cause the inundation and destruction of numerous burial, cultural, and religious sites of the Winnemem. (*Id.* ¶¶ 72, 125.) Plaintiffs allege that defendants have failed to consult with the Winnemem or "to consider, assess and mitigate potential project impacts." (*Id.* ¶¶ 125–26.)

Plaintiffs assert that these alleged actions and omissions violate the NHPA, NEPA, and NAGPRA. (*Id.* ¶ 125.)

## STANDARDS

### A. Lack Of Subject Matter Jurisdiction

■ "Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of America,* 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994). Lack of subject matter jurisdiction may be asserted by either party or by a court, *sua sponte,* at any time during the course of an action. Fed.R.Civ.P. 12(h)(2)-(3). Once challenged, the burden of establishing a federal court's jurisdiction rests on the party asserting the jurisdiction. *See Farmers Ins. Exch. v. Portage La Prairie Mut. Ins. Co.,* 907 F.2d 911, 912 (9th Cir. 1990).

■ There are two forms of 12(b)(1) attacks on subject matter jurisdiction: facial and factual attacks. *See Thornhill Publ'g Co. v. General Tel. & Elecs. Corp.,* 594 F.2d 730, 733 (9th Cir.1979). In a facial attack, a court construes jurisdictional allegations liberally and considers uncontroverted factual allegations to be true. *See Robinson v. Overseas Military Sales Corp.,* 21 F.3d 502, 507 (2d Cir.1994); *Oaxaca v. Roscoe,* 641 F.2d 386, 391 (5th Cir. 1981). However, in an action such as this, where the defendant refers to matters outside the complaint to challenge the plaintiff's assertion of subject matter jurisdiction, the 12(b)(1) motion is a factual attack. *See Safe Air v. Meyer,* 373 F.3d 1035, 1039 (9th Cir.2004). In a factual attack, a district court may review affidavits or evidence relating to the jurisdictional issue and need not presume the truthfulness of the plaintiff's allegations. *Id.* The burden then falls upon the party opposing the motion to present affidavits or other evidence to establish subject matter jurisdiction. *Id.*

### B. Failure To State A Claim

Under Federal Rule of Civil Procedure 8(a), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *See Ashcroft v. Iqbal,* —— U.S. ——, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). Under notice pleading in federal court, the complaint must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atlantic v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (internal quotations omitted). "This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims." *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 512, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002).

On a motion to dismiss, the factual allegations of the complaint must be accepted as true. *Cruz v. Beto,* 405 U.S. 319, 322, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972). The court is bound to give the plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint. *Retail Clerks Int'l Ass'n v. Schermerhorn,* 373 U.S. 746, 753 n. 6, 83 S.Ct. 1461, 10 L.Ed.2d 678 (1963). A plaintiff need not allege " 'specific facts' beyond those necessary to state his claim and the grounds showing entitlement to relief." *Twombly,* 550 U.S. at 570, 127 S.Ct. 1955. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 129 S.Ct. at 1949.

Nevertheless, the court "need not assume the truth of legal conclusions cast in the form of factual allegations." *United States ex rel. Chunie v. Ringrose,* 788 F.2d 638, 643 n. 2 (9th Cir.1986). While Rule 8(a) does not require detailed factual alle-

gations, "it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal,* 129 S.Ct. at 1949. A pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955; *Iqbal,* 129 S.Ct. at 1950 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Moreover, it is inappropriate to assume that the plaintiff "can prove facts which it has not alleged or that the defendants have violated the ... laws in ways that have not been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters,* 459 U.S. 519, 526, 103 S.Ct. 897, 74 L.Ed.2d 723 (1983).

In ruling upon a motion to dismiss, the court may consider only the complaint, any exhibits thereto, and matters which may be judicially noticed pursuant to Federal Rule of Evidence 201. *See Mir v. Little Co. of Mary Hospital,* 844 F.2d 646, 649 (9th Cir.1988); *Isuzu Motors Ltd. v. Consumers Union of United States, Inc.,* 12 F.Supp.2d 1035, 1042 (C.D.Cal. 1998). Rule 201 permits a court to take judicial notice of an adjudicative fact "not subject to reasonable dispute" because the fact is either "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed.R.Evid. 201(b). The court can take judicial notice of matters of public record, such as pleadings in another action and records and reports of administrative bodies. *See Emrich v. Touche Ross & Co.,* 846 F.2d 1190, 1198 (9th Cir.1988).

Ultimately, the court may not dismiss a complaint in which the plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face." *Iqbal,* 129 S.Ct. at 1949 (citing *Bell Atlantic Corp. v.*

*Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). Only where a plaintiff has failed to "nudge [his or her] claims across the line from conceivable to plausible," is the complaint properly dismissed. *Id.* at 1952. While the plausibility requirement is not akin to a probability requirement, it demands more than "a sheer possibility that a defendant has acted unlawfully." *Id.* at 1949. This plausibility inquiry is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 1950.

## C. Leave to Amend

Pursuant to Rule 15(a), "leave [to amend] is to be freely given when justice so requires." "[L]eave to amend should be granted unless amendment would cause prejudice to the opposing party, is sought in bad faith, is futile, or creates undue delay." *Martinez v. Newport Beach,* 125 F.3d 777, 785 (9th Cir.1997).

## ANALYSIS

The agency defendants move to dismiss plaintiffs' first through twelfth claims on the grounds that: (1) the court does not have subject matter jurisdiction to hear plaintiffs' complaint; (2) plaintiffs lack Article III standing; and (3) plaintiffs fail to state a claim upon which relief can be granted. (Defs.' Mem. Supp. Mot. Dismiss Amend. Compl. ("Agency Defs.' Mem."), filed Dec. 11, 2009, at 1–2.) Defendants Cottini and Heywood move to dismiss plaintiffs' thirteenth claim for failure to state a claim upon which relief can be granted. (Cottini and Heywood's Mem. Supp. Mot. Dismiss Amend. Compl. ("Individual Defs.' Mem."), filed Mar. 26, 2010, at 1–2.)

## A. Non-justiciable Political Question

Plaintiffs' eleventh and twelfth claims allege that defendants violate the Due Pro-

cess Clause of the Fifth Amendment by refusing to acknowledge the Winnemem as a previously federally recognized Indian tribe. (Amend. Compl. ¶¶ 135–46.) Plaintiffs assert that the Winnemem were once a federally recognized tribe but no longer receive such acknowledgment as a result of a bureaucratic error. (*Id.* ¶¶ 42, 49–51.) Plaintiffs argue that once "the government has treated the Winnemem as federally recognized for some purposes, ... that status must exist for all purposes." (*Id.* ¶ 47.) Plaintiffs claim that defendants' refusal to acknowledge the Winnemem as a previously-recognized tribe deprives plaintiffs of substantive rights, protections, and assistance that flow from federal recognition status, in violation of the Due Process Clause of the Fifth Amendment. (*Id.* ¶ 137.) In addition, plaintiffs allege that other, similarly-situated Indian tribes received federal acknowledgment outside the regular administrative recognition process, and that defendants' refusal to provide such treatment for the Winnemem denies plaintiffs equal protection of the laws, in violation of the Due Process Clause of the Fifth Amendment. (*Id.* ¶ 141–44.) In their prayer for relief, plaintiffs, *inter alia,* seek a declaration that the Winnemem have been federally recognized as a tribe and that Congress never terminated that status. (*Id.* ¶ 161.)

Defendants argue that federal recognition of Indian tribe status is a non-justiciable political question and thus, that the court is precluded from adjudicating the issue of whether or not the Winnemem are entitled to federal acknowledgment.[2] (Agency Defs.' Mem. at 5–6.)

"Questions, in their nature political, or which are, by the constitution and laws, submitted to the executive, can never be made in this court." *Marbury v. Madison,* 5 U.S. (1 Cranch) 137, 170, 2 L.Ed. 60 (1803). The Supreme Court has articulated criteria for determining when a case involves a non-justiciable political question. *Baker v. Carr,* 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962). Specifically, the Court has explained that "[p]rominent on the surface of any case held to involve a political question" may be found "a textually demonstrable constitutional commitment of the issue to a coordinate political department." *Id.* at 217, 82 S.Ct. 691.

Article I of the U.S. Constitution provides that Congress shall have the power "[t]o regulate Commerce ... with the Indian Tribes." U.S. Const., Art. I, § 8, cl. 3. The Supreme Court has explained that "in respect of distinctly Indian communities the questions whether, to what extent, and for what time they shall be recognized and dealt with as dependent tribes requiring the guardianship and protection of the United States are to be determined by Congress, and not by the courts." *United States v. Sandoval,* 231 U.S. 28, 46, 34 S.Ct. 1, 58 L.Ed. 107 (1913); *see also United States v. Holliday,* 70 U.S. 407, 419, 3 Wall. 407, 18 L.Ed. 182 (1865) (stating that in regard to the recognition of Indian tribes, "it is the rule of this court to follow the action of the executive and other political departments of the government, whose more special duty it is to determine such affairs"). Consequently, " 'the action of the federal government in recognizing or failing to recognize a tribe has traditionally been held to be a political one not subject to judicial review.' " *Miami Nation of Indians of Ind. v. U.S. Dep't of Interior,* 255 F.3d 342, 347 (7th Cir.2001) (quoting William C. Canby, Jr., *American Indian Law in a Nutshell* 5 (3d ed. 1998)).

---

**2.** Defendants also argue that plaintiffs should be judicially estopped from asserting that the Winnemem were previously a federally recognized tribe. (Agency Defs.' Mem. at 4–5.)

Because the court finds federal acknowledgment to be a non-justiciable political question, the court need not reach defendants' judicial estoppel argument.

In this case, the gravamen of plaintiffs' due process and equal protection claims is that defendants' failure to grant them federal acknowledgment as a previously recognized tribe violates the Constitution. However, the determination of whether the Winnemem are entitled to such acknowledgment is a non-justiciable political question and thus beyond the purview of the court. While plaintiffs disingenuously contend that they do not seek federal recognition through this litigation, (*See* Compl. ¶ 161), their constitutional claims necessarily require the court to inject itself in processes expressly left to the province of Congress. Accordingly, defendants' motion to dismiss plaintiffs' eleventh and twelfth claims is GRANTED without leave to amend.[3]

## B. Subject Matter Jurisdiction

### 1. Article III Standing

■■■■ Defendants assert that because the Winnemem are not a federally-recognized Indian tribe, plaintiffs lack Article III standing to assert claims for alleged injuries to tribal interests. (Agency Defs.' Mem. at 1.) Thus, defendants argue that the federal government can have no duty under the NHPA to consult with the Winnemem in their tribal capacity. (*Id.* at 10.)

■■■■ Whether the plaintiff has standing to sue is a threshold jurisdictional question. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998). The "irreducible constitutional minimum of standing" contains three requirements. *Id.* at 102–03, 118 S.Ct. 1003 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)). First, the plaintiff must allege an injury-in-fact that is concrete and particularized, and actual or imminent. *Id.* at 103, 118 S.Ct. 1003. A particularized injury is one that "affect[s] the plaintiff in a personal and individual way." *Lujan*, 504 U.S. at 561 n. 1, 112 S.Ct. 2130. Second, there must be a "fairly traceable connection between the plaintiff's injury and the complained-of conduct of the defendant." *Steel Co.*, 523 U.S. at 103, 118 S.Ct. 1003. And, third, "there must be redressability—a likelihood that the requested relief will redress the alleged injury." *Id.* The party invoking federal jurisdiction bears the burden of establishing standing. *Lujan*, 504 U.S. at 561, 112 S.Ct. 2130. However, at the pleading stage, "general factual allegations of injury resulting from the defendant's conduct may suffice" to establish constitutional standing. *Bennett v. Spear*, 520 U.S. 154, 168, 117 S.Ct. 1154, 137 L.Ed.2d 281 (1997) (quoting *Lujan*, 504 U.S. at 561, 112 S.Ct. 2130).

To the extent that claims may be brought for injuries to tribal interests pursuant to the APA and the statutes under which plaintiffs sue, plaintiffs lack Article III standing to assert those claims because plaintiffs are not a federally recognized tribe, and as set forth above, the court lacks authority to adjudicate the issue of whether plaintiffs are entitled to acknowledgment of previous federal recognition.[4]

---

**3.** Further, as set forth *infra*, to the extent plaintiffs seek to press claims on behalf of a federally recognized Indian tribe, plaintiffs lack standing, and such claims are DISMISSED without leave to amend.

**4.** Defendants also argue that regardless of whether or not the Winnemem are federally recognized, plaintiffs cannot maintain Article III standing because any tribal interests in the lands encompassed by the Central Valley Project were extinguished by a 1941 Act of Congress, Pub.L. No. 77–198, 55 Stat. 612. (Agency Defs.' Mem. at 2.) But because the Winnemem lack federal recognition, and thus lack standing to bring claims based on alleged injury to tribal interests, the argument that any tribal interests in the Central Valley Project were extinguished by the 1941 Act is

However, as the court held in its prior Order, tribal status is not plaintiffs' only available basis for Article III standing. The Ninth Circuit has held that having cultural and religious ties to an area suffering an environmental impact can be a sufficient basis to establish injury-in-fact for standing purposes. *See Pit River Tribe v. U.S. Forest Serv.*, 469 F.3d 768, 779 (9th Cir.2006) (holding that plaintiffs adequately pled injury-in-fact to allege NEPA violations where the plaintiffs had used the affected area for cultural and religious ceremonies for countless generations). The Supreme Court has also held that environmental impacts that diminish a plaintiff's aesthetic and recreational interests may be sufficient to constitute an injury-in-fact. *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 183, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000) (stating that "environmental plaintiffs adequately allege injury in fact when they aver that they use the affected area and are persons 'for whom the aesthetic and recreational values of the area will be lessened' by the challenged activity" (quoting *Sierra Club v. Morton*, 405 U.S. 727, 735, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972))); *see also Ocean Advocates v. United States Army Corps of Eng'rs*, 402 F.3d 846, 859 (9th Cir.2005) (stating that injury-in-fact is established by "showing a connection to the area of concern sufficient to make credible the contention that the person's future life will be less enjoyable").

Here, plaintiffs' first through tenth claims allege that various actions and omissions by defendants have caused damage to sites to which plaintiffs have longstanding cultural and religious ties and have interfered with plaintiffs' use and enjoyment of those sites. Thus, under *Pit River Tribe, Laidlaw*, and *Ocean Advocates*, plaintiffs have sufficiently alleged injury-in-fact to establish Article III standing over their NEPA claims.

■ Furthermore, plaintiffs' first through ninth claims allege violations of the NHPA. These claims are likewise not dependent upon acknowledgment of tribal status because, as the court held in its previous Order, under Section 106 of the NHPA, any member of the public has an interest in whether a federal agency takes into account the effect of an undertaking on any site that implicates historic preservation concerns. *See* 16 U.S.C. § 470f; 36 C.F.R. §§ 800.1; 800.2(d)(1)-(2). The Code of Federal Regulations interpret Section 106 to require federal agencies to "seek and consider the views of the public" and to "provide the public with information about an undertaking and its effects on historic properties and seek public comment and input." *See* 36 C.F.R. § 800.2(d)(1)-(2).

Plaintiffs allege that they have an interest under the NHPA in preserving the historical quality of the areas named in the first amended complaint. Plaintiffs also allege that the USFS violated prior agreements by not seeking plaintiffs' comments and by ignoring plaintiffs' input before undertaking the activities that allegedly damaged the cultural value of the affected areas. These general factual allegations, if sufficient to state a claim, are sufficient to show injury-in-fact. *See Bennett*, 520 U.S. at 168, 117 S.Ct. 1154 ("on a motion to dismiss, we presume that general allegations embrace those specific facts that are necessary to support the claim" (quoting *Lujan*, 504 U.S. at 561, 112 S.Ct. 2130)); *see also Mont. Wilderness Ass'n v. Fry*, 310 F.Supp.2d 1127, 1151 (D.Mont.2004) (holding that the plaintiff had sufficiently

irrelevant. Moreover, as defendants acknowledge, the Act does not preclude plaintiffs from stating claims as individual Indians or as members of the public. (*Id.* at 8, n. 10.) Plaintiffs' complaint, liberally construed, may be read to state such claims.

alleged injury-in-fact based on impact to sites that the plaintiff had visited in the past and planned to revisit each year in the future).

## 2. Sovereign Immunity

 Defendants further assert that the court has no subject matter jurisdiction because there is no waiver of sovereign immunity for claims brought under the ARPA, NHPA, NEPA, AIRFA, and NAGPRA. (Agency Defs.' Mem. at 11–12.) However, plaintiffs bring their first through tenth claims pursuant to the APA, 5 U.S.C. §§ 704, 706 (Amend. Compl. ¶¶ 75–133.) The APA allows plaintiffs to seek judicial review of federal agency actions and to obtain non-monetary relief for legal wrongs resulting from a final action undertaken by an agency or by an agency officer or employee. 5 U.S.C. §§ 702, 704, 706. While the APA does not create an independent basis for subject matter jurisdiction, it provides a waiver of sovereign immunity in suits seeking judicial review of a federal agency action. *See Gallo Cattle Co. v. U.S. Dep't of Agric.*, 159 F.3d 1194, 1198 (9th Cir.1998). Where plaintiffs seek judicial review under the APA of agency actions that allegedly violate other federal statutes, a federal court has subject jurisdiction pursuant to 28 U.S.C. § 1331 unless the statute in question "expressly precludes review." *Id.* Therefore, the court may exercise jurisdiction to the extent that plaintiffs can sufficiently plead claims under the APA.

## 3. APA Prudential Standing

Finally, defendants assert that plaintiffs fail to allege any discrete actions defendants were required to take. (Agency Defs.' Mem. at 13.) Thus, defendants argue, plaintiffs cannot satisfy the APA's prudential standing requirements. (*Id.*)

 Under the APA, courts shall "compel agency action unlawfully withheld or unreasonably delayed," 5 U.S.C. § 706(1), and shall hold unlawful and set aside agency actions found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). To bring suit under the APA, plaintiffs must meet statutory requirements for prudential standing. *See Churchill County v. Babbitt*, 150 F.3d 1072, 1078 (9th Cir.1998). Specifically, plaintiffs must show that (1) there has been final agency action which adversely affected them, and (2) that as a result, their injury falls within the "zone of interests" of the statutes they claim were violated. 5 U.S.C. § 702; *Churchill County*, 150 F.3d at 1078.

 "[T]wo conditions must be satisfied for agency action to be final: First, the action must mark the consummation of the agency's decisionmaking process-it must not be of a merely tentative or interlocutory nature. And second, the action must be one by which rights or obligations have been determined, or from which legal consequences will flow." *Fairbanks North Star Borough v. U.S. Army Corps of Eng'rs*, 543 F.3d 586, 591 (9th Cir.2008), *cert. denied,* —— U.S. ——, 129 S.Ct. 2825, 174 L.Ed.2d 552 (2009) (quoting *Bennett*, 520 U.S. at 177–78, 117 S.Ct. 1154). Claims may also be brought under 5 U.S.C. § 706(1) based upon an agency's failure to act when the agency fails to take a discrete action required by law. *See Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 64, 124 S.Ct. 2373, 159 L.Ed.2d 137 (2004).

Plaintiffs' first through tenth claims are based upon defendants' alleged failure to act in compliance with the mandates of various federal statutes. To the extent that plaintiffs plead sufficient facts to allege failure to undertake discrete actions required under these statutes, plaintiffs may establish prudential standing under

the APA and the court may exercise subject matter jurisdiction over the claims. Because jurisdiction thus depends upon the specific requirements of the various statutes at issue, in conjunction with the facts pled, the court analyzes plaintiffs' APA allegations on a claim-by-claim basis.

## C. Plaintiffs' First Claim for Relief: Nosoni Creek [5]

██ Plaintiffs' first claim for relief is brought pursuant to 5 U.S.C. §§ 704 and 706 for alleged violations of the ARPA and NHPA at the Nosoni Creek area. (Amend. Compl. ¶¶ 75–80.) Plaintiffs allege that the USFS destroyed medicinal "grandfather" grapevines, dumped dirt on a "sacred site," bulldozed and filled a vegetated area in violation of a "project agreement," [6] allowed unmonitored construction and industrial activity to occur resulting in biological hazards and disruptions to ecosystems, and blocked plaintiffs' access to the site. (*Id.* ¶¶ 53–55, 77.)

### 1. ARPA

The Archaeological Resources Protection Act was enacted in part "to secure, for the present and future benefit of the American people, the protection of archaeological resources and sites which are on public lands and Indian lands." 16 U.S.C. 470aa(b). The ARPA provides that "[n]o person may excavate, remove, damage, or otherwise alter or deface" any archaeological resource located on public or Indian lands unless pursuant to a permit. 16 U.S.C. § 470ee(a). Under the federal regulations pertaining to ARPA, "person" is defined to include "any officer, employee, agent, department, or instrumentality of the United States." 43 C.F.R. § 7.3(g).[7] The regulations define "archaeological resource" as "any material remains of human life or activities which are at least 100 years of age, and which are of archaeological interest." 43 C.F.R. § 7.3(a). A list of illustrative examples of material remains includes "horticultural/agricultural gardens or fields." 43 C.F.R. § 7.3(a)(3)(i).

In this case, plaintiffs have alleged that in 2001 the USFS destroyed three ancient "grandfather" grapevines that the Winnemem "had used medicinally for over 100 years." (Amend. Compl. ¶ 53.) Construing plaintiffs' complaint liberally, plaintiffs

---

**5.** The court notes at the outset that plaintiffs' claims are replete with vague, conclusory allegations relating to the alleged injuries and statutory violations occurring at numerous enumerated sites. Plaintiffs' allegations are comprised primarily of conduct or consequences they are aggrieved by, but, as set forth, *infra*, generally fail to set forth how the numerous statutes referenced have been violated or how defendants are responsible for the conduct or consequences at issue. Due to the expansive nature of the allegations and the litany of statutes alleged to have been violated, defendants have not been put on fair notice of the majority of the claims against them and the grounds upon which they rest. However, for the same reasons, the court cannot conclude that amendment would be futile as to many of these claims. Plaintiffs are cautioned that where leave to amend has been granted, further amendment to the complaint should clearly set forth the factual basis for each claim of an alleged statutory violation.

**6.** Defendants contend that no project agreement between the Winnemem and the USFS in connection with the Nosoni Creek site exists. (Agency Defs.' Mem. at 9.) However, the absence of an agreement is not be dispositive, as agreements are not required for the alleged ARPA and NHPA violations at issue.

**7.** Defendants argue that plaintiffs cannot state any claim for ARPA violations because "they have no right to seek enforcement of ARPA, only the government does." (Agency Defs.' Reply Br. at 7.) However, defendants cite no authority in support of this interpretation of the statute. Furthermore, the applicable regulations define the "any person" to whom ARPA's prohibitions apply to include federal officers and agencies. 43 C.F.R. § 7.3(g).

may be understood to allege that the "grandfather" grapevines constitute an archaeological resource within the meaning of the ARPA and that the USFS lacked a permit authorizing its action. Thus, liberally construed, plaintiffs' amended complaint alleges that the USFS destroyed three grandfather vines at Nosoni Creek, that these items are archaeological resources protected by the ARPA, and that defendants acted in violation of the ARPA by destroying the vines without a permit.[8] Because plaintiffs allege that defendants failed to take a discrete action required by statute, plaintiffs have alleged "agency action unlawfully withheld," and thus plaintiffs have sufficient stated a claim under the APA, 5 U.S.C. § 706(1), for a violation of the ARPA, 16 U.S.C. § 470ee(a).

 However, defendants argue that plaintiffs' claim is time-barred by the six-year statute of limitations applicable to claims brought under the APA. (Agency Defs.' Mem. at 15.) *See* 28 U.S.C. 2401(a); *Gros Ventre Tribe v. United States,* 469 F.3d 801, 814 n. 12 (9th Cir.2006). Plaintiffs allege that the destruction of the vines occurred in 2001, (Amend. Compl. ¶ 53.), but plaintiffs did not file their complaint until 2009. Thus, as pled, plaintiffs' ARPA claim for the destruction of the vines is barred by the statute of limitations.[9]

To the extent that plaintiffs allege other ARPA violations at the Nosoni site, plaintiffs' assertions are vague and conclusory and do not state a plausible claim for relief. Specifically, plaintiffs do not clearly make allegations against any agency other than the USFS. (Agency Defs.' Mot. at 19.) Plaintiffs maintain that "[t]he [d]efendants in this case ... should not be dismissed as to any claim." (Opp. Agency Defs.' Mot. at 17.) But from the vague allegations in plaintiffs' amended complaint, it is not apparent whether any agencies other than the USFS are alleged to have violated the ARPA in connection with Nosoni Creek, nor have plaintiffs sufficiently pled facts to state claims for any other ARPA violations at Nosoni Creek. Therefore, regarding the alleged ARPA violations in plaintiffs' first claim for relief, defendants' Motion to Dismiss is GRANTED with leave to amend.

## 2. NHPA

 In enacting the National Historic Preservation Act, Congress found that "historic properties significant to the Nation's heritage are being lost or substantially altered, often inadvertently, with increasing frequency." 16 U.S.C. § 470(b)(3). To mitigate this problem and to promote "the preservation of this irreplaceable heritage," 16 U.S.C. § 470(b)(4), Section 106 of the NHPA requires federal agencies to consider the effect of any undertaking on any site that is eligible for inclusion in the National Register before expending federal funds or approving any

---

8. Defendants argue that plaintiffs fail to state an ARPA claim because "plaintiffs have not alleged any acts which involve the intentional excavation and removal of cultural items." (Agency Defs.' Mem. at 18.) Some district courts have held that intentional conduct is required to constitute a violation of 16 U.S.C. § 470ee(a). *See, e.g., Attakai v. United States,* 746 F.Supp. 1395, 1410 (D.Ariz.1990) (stating that "the Act is clearly intended to apply specifically to purposeful excavation and removal of archaeological resources, not excavations which may, or in fact inadvertently do, uncover such resources"); *San Carlos*

*Apache Tribe v. United States,* 272 F.Supp.2d 860, 888 (D.Ariz.2003) (same, citing *Attakai* ). However, because notice pleading applies, and plaintiffs sufficiently allege that the USFS destroyed items encompassed under ARPA, the court need not reach the issue of whether intentional conduct is required at this stage in the litigation.

9. Furthermore, plaintiffs fail to allege any facts or to advance any arguments with respect to the applicability of equitable tolling or any other basis by which the six-year statute of limitations would not apply.

licenses in connection with the undertaking. 16 U.S.C. § 470f.

The NHPA's regulations require federal agencies to consult and consider the views of interested members of the public in the Section 470f process. 36 C.F.R. §§ 800.1(a), 800.2(a)(4), 800.2(d)(1), 800.2(d)(2), 800.3(e). "The goal of consultation is to identify historic properties potentially affected by the undertaking, assess its effects and seek ways to avoid, minimize or mitigate any adverse effects on historic properties." 36 C.F.R. § 800.1. The NHPA contains additional provisions requiring federal agencies to consult with Indian tribes that attach religious or cultural significance to affected properties. 16 U.S.C. § 470a(d)(6)(B); 36 C.F.R. § 800.2(c)(2).

Defendants present a Rule 12(b)(1) factual challenge to plaintiffs' assertion of subject-matter jurisdiction.[10] Pursuant to this challenge, defendants have attached various exhibits to their Motion to Dismiss, including Exhibit H, Declaration of Kristy Cottini. In her declaration, Cottini addresses plaintiffs' allegations regarding the actions of the USFS at the Nosoni Creek site. (Agency Defs.' Mem. Ex. H ¶ 4.) Cottini states that the only project undertaken by the USFS near Nosoni Creek was the Nosoni Bridge Replacement project and that a NEPA environmental analysis and NHPA Section 106 evaluation were conducted in conjunction with the project in 2000. (*Id.*) According to Cottini, "[t]he Section 106 evaluation concluded that the bridge was not eligible for the National Historic Register, and there were no other historic properties in the project area." (*Id.*)

Where a party introduces evidence challenging a federal court's subject matter jurisdiction, the burden falls upon the opposing party to present evidence to establish jurisdiction. *See Safe Air v. Meyer,* 373 F.3d at 1039. Here, defendants have introduced evidence to show compliance with the NHPA's requirements. Plaintiffs fail to allege with any clarity any deficiency in the Section 106 process completed in 2000. Furthermore, it is also unclear if plaintiffs allege that any defendants violated NHPA through activities at Nosoni Creek outside of the scope of the previously completed Section 106 process. Thus, even as interested members of the public, plaintiffs have not clearly stated allegations giving rise to any plausible injury-in-fact under the NHPA. Therefore, as to the alleged NHPA violations in connection with Nosoni Creek, defendants' Motion to Dismiss is GRANTED with leave to amend.

### D. Plaintiffs' Second Claim: the Dekkas Site

 Plaintiffs' second claim for relief is brought pursuant to 5 U.S.C. §§ 704 and 706 for alleged violations of the ARPA, NHPA, and NEPA at the Dekkas area. Plaintiffs allege that defendants improperly revoked a special use permit and refused to issue new permits without cause; cut old-growth manzanita trees in violation of an agreement with the Winnemem; cut a lock from a gate and facilitated entry of campers and hikers into the site; and ordered plaintiffs to remove from the site various items including rocks of historical and cultural significance to the Winnemem. (Amend. Compl. ¶¶ 59–63.)

---

10. Defendants also argue that plaintiffs lack standing to establish NHPA claims based upon failure to consult the Winnemem because "NHPA regulations regarding consultation on historic properties of religious and cultural significance to Indian tribes only require consultation with federally-recognized Indian tribes." (Agency Defs.' Mem. at 13.) However, plaintiffs may be entitled to participate in the public consultation process required under Section 106.

## 1. NEPA

The National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4321, establishes a national policy of environmental stewardship in order to promote various purposes, including to "fulfill the responsibilities of each generation as trustee of the environment for succeeding generations," 42 U.S.C. § 4331(b)(1), and to "preserve important historic, cultural, and natural aspects of our national heritage." 42 U.S.C. § 4331(b)(4). The NEPA requires federal agencies to prepare a detailed Environmental Impact Statement ("EIS") for all "major Federal actions significantly affecting the quality of the human environment." 42 U.S.C. § 4332(C). In order to determine whether or not a proposed action requires the preparation of an EIS, an agency may prepare an Environmental Assessment ("EA"). *See Te–Moak Tribe of W. Shoshone of Nev. v. U.S. Dep't of the Interior*, 608 F.3d 592, 599–600 (9th Cir. 2010); 40 C.F.R. §§ 1501.4(b), 1501.4(c). An EA is "a concise public document" that serves to "[b]riefly provide sufficient evidence and analysis for determining whether to prepare an environmental impact statement or a finding of no significant impact." 40 C.F.R. § 1508.9. An agency may also comply with NEPA's requirements by determining that a proposed action falls within an established categorical exclusion, a category of actions that have been previously determined under agency regulations not to have a significant effect on the human environment. 40 C.F.R. §§ 1501.4(a), 1508.4. Moreover, to bring a claim under the APA for a violation of the NEPA, plaintiffs must show that they have exhausted available administrative remedies prior to bringing an action in federal court. *See Idaho Sporting Congress, Inc. v. Rittenhouse*, 305 F.3d 957, 965 (9th Cir. 2002).

Here, defendants argue that plaintiffs fail "to allege any facts that establish how NEPA has been violated" or to identify "any final agency action or decision that could be the subject of a NEPA challenge." (Agency Defs.' Mem. at 18.)

Plaintiffs' allegations as to defendants' alleged NEPA violations at the Dekkas site are insufficient to state a plausible claim for relief. Plaintiffs do not specify any final agency action or failure to take a discrete action required by statute as the basis of an alleged NEPA violation. Even assuming that cutting old-growth manzanita trees might qualify as a major federal action, plaintiffs fail to specify how the USFS allegedly violated NEPA with this action. Plaintiffs do not allege that the USFS failed to prepare an EIS or EA and do not allege that the cutting was not encompassed within a categorical exclusion. Further, plaintiffs do not plead any facts establishing that they have exhausted any available administrative remedies. Plaintiffs thus fail to plead sufficient facts to give rise to a plausible claim for relief. Therefore, as to the NEPA violations alleged in plaintiffs' second claim for relief, defendants' Motion to Dismiss is GRANTED with leave to amend.

## 2. ARPA

The ARPA violations alleged in plaintiffs' second claim for relief are vague and conclusory. Plaintiffs do not specifically identify any archaeological resources or the manner in which the ARPA was allegedly violated. While plaintiffs do make reference to "an ancient fire pit with rocks that have been used by the Winnemem for hundreds of years," (Amend. Compl. ¶ 59), it is not clear whether plaintiffs are asserting that any damage occurred to the fire pit, or simply objecting to defendants' alleged failure to issue a permit in connection with the property. Although plaintiffs also assert that the USFS destroyed "sacred trees" at the site,

(*Id.* ¶ 83), plaintiffs do not allege that the USFS acted without a permit or that the trees constitute archaeological resources. Furthermore, it is not clear that the trees meet the definition of an archaeological resource under the applicable regulations. *See* 43 C.F.R. § 7.3(a).

Because plaintiffs fail to plead sufficient facts to state a plausible claim for any ARPA violation at the Dekkas site, defendants' Motion to Dismiss is GRANTED with leave to amend as to the ARPA violations alleged in plaintiffs' second claim for relief.

### 3. NHPA

■■■ Plaintiffs' allegations of NHPA violations at the Dekkas area are likewise insufficient. Plaintiffs allege that the USFS cut down old-growth Manzanita trees without notice to the Winnemem. (Amend. Compl. ¶¶ 61–62.) However, plaintiffs do not allege that any portion of the Dekkas Site is eligible for inclusion in the National Register or that the USFS failed to engage in required public consultation prior to acting.[11] To the extent that plaintiffs might assert NHPA violations for failure to consult the public, plaintiffs thus fail to state a plausible claim for relief. Therefore, as to the alleged NHPA violations in plaintiffs' second claim for relief, defendants' Motion to Dismiss is GRANTED with leave to amend.

### 4. Failure to Issue Permits

■■■ In response to plaintiffs' allegations regarding use permits for the Dekkas area, defendants again point to the Cottini Declaration. (Agency Defs.' Mem.

at 10.) According to Cottini, the USFS previously issued a nontransferable individual use permit for the Dekkas Rock area to Florence Jones, a Winnemem Wintu, in 1979. (Agency Defs.' Mem. Ex. H ¶ 6.) Cottini states that the permit expired in 1989 and that another nontransferable permit was issued to Jones in 1995. (*Id.*) According to Cottini, the second permit terminated by operation of law upon Jones's death in 2003. (*Id.*) Cottini further states that the Winnemem Wintu, Mark Franco, and Caleen Sisk Franco have never applied to the USFS for a special use permit for the Dekkas Rock Area. (*Id.*)

Unless plaintiffs can establish that a permit was required for the Dekkas Rock area, that they applied for a permit, and that the USFS denied their application, plaintiffs cannot show final agency action denying them a permit, and thus cannot show injury-in-fact.[12] Because defendants have introduced evidence challenging the assertion of subject matter jurisdiction, the burden shifts to plaintiffs to show that they meet the final agency action requirement for prudential standing under the APA, 5 U.S.C. § 704, as well as injury-in-fact to establish Article III standing. Plaintiffs have failed to meet this burden, and therefore, as to the permit allegations in plaintiffs' second claim for relief, defendants' Motion to Dismiss is GRANTED with leave to amend.

### E. Plaintiffs' Third Claim: the Coonrod Cultural Site

Plaintiffs' third claim for relief is brought pursuant to 5 U.S.C. §§ 704 and

---

11. While the NHPA does require federal agencies to consult with Indian tribes that attach religious or cultural significance to affected properties, *see* 16 U.S.C. § 470a(d)(6)(B), 36 C.F.R. § 800.2(c)(2), as set forth *supra*, plaintiffs lack standing to bring claims for alleged violations of these

requirements because the Winnemem are not a federally recognized Indian tribe.

12. Importantly, Cottini states that the Dekkas Rock area is on lands open to the public, and that *plaintiffs do not need a permit to use the site.* (Agency Defs.' Mem. Ex. H ¶ 6.)

706 for alleged violations of the ARPA and NHPA at the Coonrod Cultural Site. Plaintiffs allege that the USFS allowed campers, hikers, and hunters to gain access to the Coonrod site; that the USFS failed to prevent cattle from trampling and destroying a "sacred fire pit"; and that the USFS refused to take adequate measures to preserve cultural artifacts at the site. (Amend. Compl. ¶¶ 64, 89.)

### 1. ARPA

██ Plaintiffs' allegations of ARPA violations at the Coonrod site are vague and conclusory. Plaintiffs do not allege any action taken without a required permit. In addition, plaintiffs fail to identify any archaeological resources encompassed by ARPA, nor do they plead facts with sufficient clarity to give rise to a plausible inference that defendants destroyed any archaeological resources. Furthermore, despite plaintiffs' assertion that the agency defendants other than the USFS should not be dismissed as to any claim, plaintiffs do not allege any activities by any defendants other than the USFS in connection with the Coonrod site. Thus, plaintiffs fail to allege sufficient facts to give rise to a plausible ARPA claim against any defendant. Therefore, regarding the alleged ARPA violations in plaintiffs' third claim for relief, defendants' Motion to Dismiss is GRANTED with leave to amend.

### 2. NHPA

██ Plaintiffs likewise fail to plausibly allege any NHPA violations in their third claim for relief. Plaintiffs do not sufficiently allege any final agency action in violation of the NHPA or failure to perform a discrete action required by the NHPA. Plaintiffs appear to object to the USFS's alleged failure to exclude campers, hikers, hunters, and cattle from the Coonrod site and the USFS's alleged failure to take measures to protect artifacts. However, plaintiffs do not specify any USFS

undertaking among these alleged omissions that would trigger the Section 106 process, nor do the facts alleged, even liberally construed, give rise by inference to any discernible NHPA violation. Plaintiffs also fail to identify any action by any other agency that could constitute an NHPA violation at the Coonrod site. Consequently, as to the alleged NHPA violations in plaintiffs' third claim for relief, defendants' Motion to Dismiss is GRANTED with leave to amend.

### F. Plaintiffs' Fourth Claim: Gilman Road

Plaintiffs' fourth claim for relief is brought pursuant to 5 U.S.C. §§ 704 and 706 for alleged violations of the ARPA, NHPA, and NEPA in connection with Gilman Road. Plaintiffs allege that the USFS violated the ARPA and NHPA by cutting and spraying with herbicides certain "culturally important medicinal plants" in violation of an agreement with the Winnemem. (Amend. Compl. ¶¶ 65, 95.) Plaintiffs allege that the USFS violated the NEPA by "failing to disclose projects that damaged Cultural and Religious Sites and by failing to take all possible steps to mitigate the damage." (Amend. Compl. ¶ 95.)

### 1. ARPA

██ Plaintiffs fail to allege any facts that could constitute a plausible claim for a violation of the ARPA. Plaintiffs do not identify any archaeological resources nor do they plead any facts giving rise to a plausible inference that the USFS removed or damaged any archaeological resources, with or without a permit. Plaintiffs also fail to make any allegations pertaining to any other defendant. Therefore, as to the alleged ARPA violations in plaintiffs' fourth claim for relief, defendants' Motion to Dismiss is GRANTED with leave to amend.

## 2. NHPA and NEPA

Defendants have introduced evidence to show compliance with the NHPA and NEPA in connection with Gilman Road. In Exhibit H to defendants' Memorandum in support of their Motion to Dismiss, the Declaration of Kristy Cottini, defendant Cottini states that the USFS completed an NHPA Section 106 evaluation and a NEPA environmental assessment for the Gilman Road Shaded Fuelbreak Project.[13] (Agency Defs.' Mem. Ex. H ¶ 5.) Cottini further states that Caleen Sisk Franco and Mark Franco participated in the NEPA process, which was completed in June 2003.(*Id.*)

Plaintiffs do not identify any deficiency in the USFS's previous Section 106 evaluation, nor do plaintiffs allege with any clarity any NHPA violation at Gilman Road outside the scope of the previous evaluation. Similarly, as to their NEPA allegations, plaintiffs fail to identify any deficiency in the EA that the USFS prepared in June 2003, or to allege any USFS action outside the scope of the previous EA and in violation of the NEPA. Further, plaintiffs fail to plead any facts establishing exhaustion of NEPA administrative remedies or to plead any facts giving rise to any plausible NHPA or NEPA claim against any other defendant. Therefore, as to the alleged NHPA and NEPA violations in plaintiffs' fourth claim for relief, defendants' Motion to Dismiss is GRANTED with leave to amend.

## G. Plaintiffs' Fifth Claim: Buck Saddle Prayer Site

Plaintiffs' fifth claim for relief is brought pursuant to 5 U.S.C. §§ 704 and 706 for alleged violations of the ARPA, NHPA, and NEPA in connection with the Buck Saddle Prayer Site. Plaintiffs allege that the USFS created a recreational bike trail through "one of the Winnemem's sacred prayer sites" without disclosing the activity; converted a "sacred prayer rock" into a ramp for dirt bikes; allowed common access to the site without protecting "sacred artifacts"; and "enable[d] ongoing degradation" of "ecosystems," "natural resources," and "known archaeological sites." (Amend. Compl. ¶¶ 66, 101.) Plaintiffs further allege that "[t]he USFS, Ms. Cottini and Ms. Heywood also failed to include the Winnemem in the planning of these acts of deliberate desecration." (*Id.* ¶ 66.)

## 1. ARPA

Plaintiffs' allegations regarding "known archaeological sites" in the Buck Saddle area are vague and conclusory. Plaintiffs do not identify specific archaeological resources protected by the ARPA, nor do they identify any action by the USFS, such as the removal or destruction of archaeological resources without a permit, that could constitute an ARPA violation. Consequently, plaintiffs have not pled sufficient facts to state a plausible claim for an ARPA violation by the USFS. Plaintiffs do not make any allegations regarding the other agency defendants, and the alleged failure of defendants Cottini and Heywood to consult the Winnemem does not give rise to any plausible claim for an ARPA violation. Therefore, as to the alleged ARPA violations in plaintiffs' fifth claim for relief, defendants' Motion to Dismiss is GRANTED with leave to amend.

## 2. NHPA

Construing the amended complaint liberally, plaintiffs allege that the Buck Saddle Prayer Site is eligible for inclusion in the National Register and that activities by the USFS at the site constitute an "undertaking" requiring evaluation under 16 U.S.C. § 470f. While plaintiffs

13. The court may take judicial notice of agency reports pursuant to Fed.R.Evid. 201(b).

have framed their claim for relief based on the USFS's alleged failure to consult the Winnemem as a tribe,[14] a liberal construction of the amended complaint permits the inference that plaintiffs allege the USFS failed to consult and consider the views of interested members of the public, and that such consultation was required under 36 C.F.R. §§ 800.1(a), 800.2(a)(4), 800.2(d)(1), 800.2(d)(2), 800.3(e). Therefore, regarding the alleged NHPA violations at the Buck Saddle site, to the extent that plaintiffs allege the USFS failed to comply with the requirements of 16 U.S.C. § 470f in conjunction with the construction of the bike trail and dirt bike ramp, defendants' Motion to Dismiss plaintiffs' fifth claim for relief is DENIED.

### 3. NEPA

However, plaintiffs' allegations of NEPA violations at the Buck Saddle site are insufficient to state a plausible claim for relief. Even if plaintiffs' complaint is construed liberally to allege that the construction of the bike trail and bike ramp constituted "major Federal actions significantly affecting the quality of the human environment" within the meaning of 42 U.S.C. § 4332(C), plaintiffs fail to allege any facts that would give rise to the inference that the USFS violated the NEPA in connection with these actions. Plaintiffs do not allege that the USFS failed to prepare an EIS or EA and do not allege that the construction was not encompassed within a categorical exclusion from NEPA requirements. Nor do plaintiffs plead any facts to establish exhaustion of administrative remedies. Therefore, as to the alleged NEPA violations in plaintiffs' fifth claim for relief, defendants' Motion to Dismiss is GRANTED with leave to amend.

### H. Plaintiffs' Sixth Claim: Panther Meadow

Plaintiffs' sixth claim for relief is brought pursuant to the APA, 5 U.S.C. §§ 704 and 706, for alleged violations of the ARPA, NHPA, and NEPA in connection with Panther Meadow. Plaintiffs allege that the USFS permitted visitors to scatter human cremation remains and to inflict unspecified damage on the site, failed to close Panther Meadow, and failed to regulate public access sufficiently to prevent damage to the site. (Amend. Compl. ¶¶ 67, 107.)

Plaintiffs' allegations are vague and conclusory. Plaintiffs fail to allege the presence of any archaeological resources protected by the ARPA or any removal or destruction of such resources that could constitute an ARPA violation. Plaintiffs also fail to allege any USFS undertaking at the site that could require a Section 106 process under the NHPA, nor do they allege the failure to engage in such a process. Finally, plaintiffs fail to identify any major federal action that might require an EIS or EA pursuant to the NEPA, or to plead facts demonstrating exhaustion of administrative remedies. Consequently, defendants' Motion to Dismiss plaintiffs' sixth claim for relief is GRANTED with leave to amend.

### I. Plaintiffs' Seventh Claim: Shasta Reservoir Indian Cemetery

Plaintiffs' seventh claim for relief is brought pursuant to the APA, 5 U.S.C. §§ 704 and 706, for alleged violations of the ARPA, NHPA, and NEPA in connection with the Shasta Reservoir Indian Cemetery. Plaintiffs allege that the BLM denied the Winnemem access to the cemetery for burials. (Amend. Compl.

**14.** As set forth *supra,* plaintiffs do not have standing to bring such allegations because the Winnemem lack federal recognition.

¶ 68.) Plaintiffs also allege that defendants allowed unspecified damage to the cemetery and "fail[ed] to fulfill their trust responsibilities for the Cemetery." (*Id.* ¶ 113).

Plaintiffs' allegations are vague and conclusory and do not plausibly give rise to any violations of the statutes at issue. Plaintiffs do not identify any archaeological resources or any actions by any defendant that could conceivably constitute a violation of the ARPA. Plaintiffs do not identify any agency undertaking that might require a Section 106 process under the NHPA or the failure to engage in such a process. Finally, plaintiffs do not identify any major agency action or failure to perform an EIS or EA pursuant to the NEPA and do not demonstrate exhaustion of administrative remedies. Therefore, defendants' Motion to Dismiss plaintiffs' seventh claim for relief is GRANTED with leave to amend.

### J. Plaintiffs' Eighth Claim: the Rocky Ridge Village Site

Plaintiffs' eighth claim for relief is brought pursuant to the APA, 5 U.S.C. §§ 704 and 706, for alleged violations of the NHPA, NEPA, and NAGPRA in connection with the construction of a parking lot and the parking of recreational vehicles at the Rocky Ridge Village site.

#### 1. Construction of a Parking Lot

Plaintiffs allege that the USFS intends to permit the construction of a parking lot on a village and burial site, and that the USFS has failed to engage in pre-project consultation with the Winnemem in connection with. the planned construction. (*Id.* ¶ 71.)

■ Defendants assert that plaintiffs lack standing to bring their claims in con-

nection with the Rocky Ridge Village site because according to defendants, there is no USFS project to construct a parking lot, and thus, plaintiffs cannot show injury-in-fact to establish Article III standing or final agency action sufficient for APA prudential standing. (Agency Defs.' Mem. at 11.) Defendants point to Exhibit H of their Memorandum, a declaration in which defendant Cottini asserts that "[t]here is no past or current Forest Service project to construct a parking lot at the Rocky Ridge Village site."[15] (¶ 7.)

Based on the Cottini declaration, the USFS has not undertaken any project to construct a parking lot, and thus, there is no final agency action and no injury-in-fact to plaintiffs. Thus, plaintiffs lack standing to bring claims regarding future construction.

#### 2. Permitting Recreational Vehicles to Park

■ Plaintiffs also allege that the USFS permits campers to park recreational vehicles in a make-shift parking area located on ceremonial sites that the Winnemem use for religious worship. (Amend. Compl. ¶ 71, 119.)

##### a. NAGPRA

The Native American Grave Protection and Repatriation Act imposes restrictions on the intentional excavation and removal of Native American human remains and objects. 25 U.S.C. § 3002(c). Under the NAGPRA, the "intentional removal from or excavation of Native American cultural items from Federal or tribal lands" may only be conducted pursuant to a permit under the ARPA, 16 U.S.C. § 470cc, and after consultation with or consent by the appropriate Indian tribe. 25 U.S.C.

---

**15.** The court may review evidence outside the complaint when considering a Rule 12(b)(1) factual attack on plaintiffs' assertion of subject matter jurisdiction. *See Safe Air v. Meyer,* 373 F.3d at 1039.

§ 3002(c). In the event of the inadvertent discovery of Native American remains or objects on federal lands, NAGPRA requires notification of the head of the agency with primary management authority over the site. 25 U.S.C. § 3002(d)(1). If an inadvertent discovery occurs in connection with an activity, the person finding the items must "cease the activity in the area of the discovery, make a reasonable effort to protect the items discovered before resuming such activity, and provide notice" of the discovery. *Id.*

Defendants argue that plaintiffs fail to state a claim for any NAGPRA violations because plaintiffs do not allege any intentional excavation and removal of cultural items by the USFS. (Agency Defs.' Mem. at 19.) Defendants also point out that plaintiffs do not make allegations concerning any defendant other than the USFS in connection with the Rocky Ridge site. (*Id.*)

Plaintiffs' allegations of NAGPRA violations are vague and conclusory. Plaintiffs fail to allege that any defendant excavated or removed, either intentionally or inadvertently, any specific Indian remains or objects at the Rocky Ridge site. Thus, plaintiffs fail to state a plausible claim for a violation of NAGPRA by any defendant. Therefore, as to plaintiffs' allegations of NAGPRA violations at the Rocky Ridge site, defendants' Motion to Dismiss is GRANTED with leave to amend.

#### b. NHPA and NEPA

Plaintiffs' allegations are likewise insufficient to state a claim for any NHPA or NEPA violations based on the USFS allowing vehicles to park at the Rocky Ridge Village site. Even liberally construing the amended complaint to allege that the site is eligible for inclusion in the National Register, plaintiffs do not identify any undertaking by the USFS that could trigger the Section 106 process under the NHPA, nor do they allege failure to engage in this process. Similarly, plaintiffs fail to allege any major federal action in the absence of an EIS or EA under the NEPA, and do not demonstrate exhaustion of administrative remedies. Thus, as to the alleged NHPA and NEPA violations at Rocky Ridge Village, defendants' Motion to Dismiss plaintiffs' eighth claim for relief is GRANTED with leave to amend.

### K. Plaintiffs' Ninth Claim: Shasta Dam

Plaintiffs' ninth claim for relief is brought pursuant to the APA, 5 U.S.C. §§ 704 and 706, for alleged violations of the NHPA, NEPA, and NAGPRA in connection with Shasta Dam. Plaintiffs allege that defendants are evaluating proposals to raise Shasta Dam and that this proposed action would cause the inundation and destruction of burial, ceremonial, and religious sites important to the Winnemem. (Amend. Compl. ¶ 125.) Plaintiffs further allege that defendants have refused to assess or to mitigate the impact of this alleged project or to engage in consultation with the Winnemem regarding the project. (*Id.* ¶ 126.)

Defendants argue that plaintiffs lack standing to bring claims regarding raising Shasta Dam because no final decision has been made to raise the dam. (Agency Defs.' Mem. at 11.) Pursuant to their challenge to plaintiffs' assertion of subject matter jurisdiction, defendants present evidence that the Shasta Dam project is currently the subject of a feasibility study that will not be completed until at least 2011. (Agency Defs.' Ex. I, ¶ 4.) According to a declaration by Deputy Regional Director for the Bureau of Reclamation Pablo Arroyave, "Reclamation is not congressionally authorized to move beyond the feasibility study phase and actually increase Shasta Reservoir storage by raising Shasta Dam." (*Id.*)

Plaintiffs' amended complaint alleges only that defendants are "evaluating" proposals to raise Shasta Dam. (Amend. Compl. ¶ 125.) Plaintiffs do not allege final agency action, or failure to take a discrete action required by statute, by any defendant, in connection with Shasta Dam. Thus, plaintiffs fail to plead the requirements of APA prudential standing. Plaintiffs also fail to show injury-in-fact, and thus have not established Article III standing. Consequently, defendants' Motion to Dismiss plaintiffs' ninth claim for relief is GRANTED without leave to amend.

### L. Plaintiffs' Tenth Claim: AIRFA and RFRA

■ Plaintiffs' tenth claim for relief is brought pursuant to the APA, 5 U.S.C. §§ 704 and 706, for alleged violations of the AIRFA and RFRA in connection with alleged activities at various sites, including Nosoni Creek, the Dekkas site, the Coonrod site, the Buck Saddle Prayer Site, and "numerous other" unspecified sites on the McCloud River. (Amend. Compl. ¶ 131.) Plaintiffs allege that defendants violated the AIRFA and RFRA by interfering with plaintiffs' access to and use of these sites for religious activities. (*Id.*)

### 1. AIRFA

The American Indian Religious Freedom Act provides that "it shall be the policy of the United States to protect and preserve for American Indians their inherent right of freedom to believe, express, and exercise the traditional religions of the American Indian, Eskimo, Aleut, and Native Hawaiians, including but not limited to access to sites, use and possession of sacred objects, and the freedom to worship through ceremonials and traditional rites." 42 U.S.C. § 1996. The Supreme Court has held that AIRFA does not "create a cause of action or any judicially enforceable individual rights." *Lyng v. Nw. Indi-*

*an Cemetery Protective Ass'n*, 485 U.S. 439, 455, 108 S.Ct. 1319, 99 L.Ed.2d 534 (1988); *see also Henderson v. Terhune*, 379 F.3d 709, 715 (9th Cir.2004) (stating that "AIRFA is simply a policy statement that is judicially unenforceable").

Defendants argue that because AIRFA does not create judicially enforceable rights, plaintiffs' AIRFA claim fails to state a claim for which relief can be granted. (Agency Defs.' Mem. at 20.)

Because AIRFA is simply a policy statement, AIRFA does not mandate any discrete agency action that defendants must undertake, nor can plaintiffs establish a final agency action by any defendant in violation of AIRFA. Consequently, plaintiffs fail to state a claim pursuant to the APA for any violation of AIRFA. Therefore, regarding the alleged AIRFA violations in plaintiffs' tenth claim for relief, defendants' Motion to Dismiss is GRANTED without leave to amend.

### 2. RFRA

■ The Religious Freedom and Restoration Act provides that "[g]overnment shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability" except where the government demonstrates that the burden "(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. §§ 2000bb–1(a), 2000bb–1(b). The Ninth Circuit has held that a "substantial burden" under the RFRA "is imposed only when individuals are forced to choose between following the tenets of their religion and receiving a governmental benefit or coerced to act contrary to their religious beliefs by the threat of civil or criminal sanctions." *Navajo Nation v. U.S. Forest Serv.*, 535 F.3d

1058, 1070 (9th Cir.2008) (internal references omitted).

Defendants argue that plaintiffs fail to state a claim for any RFRA violations because plaintiffs do not allege any instance of being forced to choose between following their religious tenets and receiving a governmental benefit or of being coerced to act contrary to their religious beliefs by the threat of civil or criminal sanctions. (Agency Defs.' Mem. at 20.)

Plaintiffs answer this objection by merely repeating their vague and conclusory assertions that defendants violated the RFRA by failing to preserve and grant plaintiffs access to various sites. (Opp. Agency Defs.' Mot. Dismiss at 18.) Because plaintiffs do not plead any facts to establish a "substantial burden" to their exercise of religion, plaintiffs thus fail to state a claim for any violation of RFRA. Therefore, regarding the alleged RFRA violations in plaintiffs' tenth claim for relief, defendants' Motion to Dismiss is GRANTED with leave to amend.

## M. *Bivens* Claim

Plaintiffs bring their thirteenth claim for relief under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), against defendants Cottini and Heywood in their individual capacities. Plaintiffs argue that Cottini and Heywood went beyond their official duties as USFS employees and violated plaintiffs' constitutional rights. (Amend. Compl. ¶ 150–52.) Specifically, plaintiffs allege that Cottini and Heywood violated plaintiffs' First and Fifth Amendment rights by (1) engaging in "[d]isparate treatment of Plaintiffs' tribal interests and preferential treatment of recreational activities along the McCloud River"; (2) failing to consult with the Winnemem concerning a plan to replace the McCloud River Bridge; (3) damaging Winnemem

cultural sites in connection with a campground expansion at Hirz Bay; (4) failing to consult with the Winnemem concerning the Hirz Bay campground expansion; (5) revoking a special use permit for the Dekkas site; (6) damaging and allowing others to damage the Buck Saddle site; (7) failing to take sufficient measures, in consultation with the Winnemem, to protect the Buck Saddle site; and (8) advising other federal agencies that the USFS could not meet with plaintiffs regarding replanting activity at sites not addressed in this action. (Amend. Compl. ¶¶ 57–58, 150–151.) Plaintiffs further allege that defendant Heywood violated the First and Fifth Amendments by refusing to discipline or to provide "cultural sensitivity training" to defendant Cottini and by cancelling "MOU meetings" with plaintiffs concerning Panther Meadows. (*Id.* ¶¶ 150–151.)

"In *Bivens,* the Supreme Court 'recognized for the first time an implied right of action for damages against federal officers alleged to have violated a citizen's constitutional rights.'" *W. Radio Servs. Co. v. U.S. Forest Serv.,* 578 F.3d 1116, 1119 (9th Cir.2009) (quoting *Ashcroft v. Iqbal,* —— U.S. ——, 129 S.Ct. 1937, 1947, 173 L.Ed.2d 868 (2009)). The *Bivens* Court held that a plaintiff was entitled to bring a federal court action against individual federal agents for damages resulting from the violation of his Fourth Amendment rights. 403 U.S. at 397, 91 S.Ct. 1999. The Supreme Court has extended *Bivens* liability to other contexts. In *Davis v. Passman,* the Court recognized an implied cause of action for damages for a violation of the Due Process Clause of the Fifth Amendment, 442 U.S. 228, 248–49, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979), and in *Carlson v. Green,* the Court held that a *Bivens* remedy was available for a violation of the Eighth Amendment's prohibition against cruel and unusual punishment. 446 U.S. 14, 20–21, 100 S.Ct. 1468, 64 L.Ed.2d 15

(1980). However, "[b]ecause implied causes of action are disfavored, the Court has been reluctant to extend *Bivens* liability 'to any new context or new category of defendants.'" *Iqbal*, 129 S.Ct. at 1948 (quoting *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 68, 122 S.Ct. 515, 151 L.Ed.2d 456 (2001)); *see also W. Radio Servs. Co.*, 578 F.3d at 1119 (citing decisions "across a variety of factual and legal contexts" in which the Supreme Court refused to extend *Bivens* liability).

To determine whether a *Bivens* remedy is consistent with Congressional intent, the Supreme Court has developed a two-step analysis. *W. Radio Servs. Co.*, 578 F.3d at 1120. First, a court must determine whether there is "'any alternative existing process for protecting' the plaintiff's interest." *Id.* (quoting *Wilkie v. Robbins*, 551 U.S. 537, 550, 127 S.Ct. 2588, 168 L.Ed.2d 389 (2007)). The existence of a remedial process "raise[s] the inference that Congress 'expected the Judiciary to stay its *Bivens* hand' and 'refrain from providing a new freestanding remedy in damages.'" *Id.* (quoting *Wilkie*, 551 U.S. at 550, 554, 127 S.Ct. 2588). If the court "cannot infer that Congress intended a statutory remedial scheme to take the place of a judge-made remedy," the court must move on to the second step and evaluate whether there are "'factors counseling hesitation' before devising such an implied right of action." *Id.* (quoting *Wilkie*, 551 U.S. at 550, 127 S.Ct. 2588).

Defendants Cottini and Heywood move to dismiss plaintiffs' *Bivens* claim on multiple grounds, asserting, *inter alia*, (1) that the availability of a remedy under the APA precludes plaintiffs from bringing a *Bivens* claim, and (2) that the claim is barred by the court's prior Order dismissing the FTCA claims in plaintiffs' initial complaint. (Individual Defs.' Mot. Dismiss First Amend. Compl. at 1–2.)

### 1. Availability of the APA

The Ninth Circuit has held that where a remedy is available under the APA, a plaintiff is precluded from bringing a *Bivens* claim. *W. Radio Servs. Co.*, 578 F.3d at 1122–23. In *Western Radio*, the plaintiff brought claims against the USFS and some of its officers under both the APA and *Bivens*, alleging violations of the First and Fifth Amendments and the APA. 578 F.3d at 1118. Noting that "[t]he APA expressly declares itself to be a comprehensive remedial scheme" and that the "APA's procedures are available where no other adequate alternative remedy exists," the court concluded that "the APA leaves no room for *Bivens* claims based on agency action or inaction." *Id.* at 1122–23.

The instant case is controlled by *Western Radio*. Here, plaintiffs have brought a *Bivens* claim against defendants Cottini and Heywood based on essentially the same allegations upon which they bring their APA claims against the agency defendants. Thus, plaintiffs' other claims for relief demonstrate the potential availability of an alternative remedy.

Plaintiffs argue that the APA does not preclude their *Bivens* claim because the alleged actions by Cottini and Heywood at issue were "extra procedural" acts outside of the individual defendants' official duties, and thus not within the scope of administrative agency action subject to APA review. (Opp. Cottini and Heywood's Mot. Dismiss at 6.) However, this assertion is belied by plaintiffs' amended complaint, in which the same allegations are pled both under the APA and under *Bivens*. Plaintiffs fail to allege facts demonstrating any instance where Cottini or Heywood acted outside of an official capacity, but simply fall back on the conclusory assertion that Cottini and Heywood "were acting outside the scope of their authority and employment functions as federal employees."

(Amend. Compl. ¶ 152.) Under *Western Radio,* plaintiffs' *Bivens* claim thus fails as a matter of law because the availability of the APA provides plaintiffs with an adequate remedial scheme.

### 2. The FTCA Judgment Bar

■ Although plaintiffs may amend their complaint to plead allegations for which relief under the APA is unavailable, defendants maintain that plaintiffs' *Bivens* claim is precluded by the judgment bar of the Federal Tort Claims Act, 28 U.S.C. § 2676. (Individual Defs.' Mem. at 4–6.)

The FTCA contains a limited waiver of sovereign immunity authorizing civil tort suits for money damages against the United States government. *See Vacek v. U.S. Postal Serv.,* 447 F.3d 1248, 1250 (9th Cir. 2006). The FTCA grants federal courts jurisdiction to hear claims for damages for injury or loss of property caused by the negligent or wrongful act or omission of any federal employee acting within the scope of his office or employment under circumstances where the United States, if a private person, would be liable to the claimant. 28 U.S.C. § 1346(b)(1). Under the FTCA, a judgment in an action brought pursuant to 28 U.S.C. § 1346(b) "shall constitute a complete bar to any action by the claimant, by reason of the same subject matter, against the employee of the government whose act or omission gave rise to the claim." 28 U.S.C. § 2676.

In their initial complaint, plaintiffs brought FTCA claims for money damages pursuant to 28 U.S.C. § 1346(b)(1). (Compl. ¶ 2). In its prior Order, the court dismissed plaintiffs' FTCA claims without leave to amend for lack of subject matter jurisdiction based upon plaintiffs' failure to exhaust administrative remedies and to meet the statute of limitations. (Order at 23–24.)

Defendants maintain that plaintiffs' *Bivens* claim is "by reason of the same sub-ject matter" as their FTCA claims, and thus barred under 28 U.S.C. § 2676. (Individual Defs.' Mem. at 4.) Plaintiffs do not dispute that their *Bivens* claim arises out of the same subject matter as their dismissed FTCA claims, but argue (1) that the FTCA's judgment bar does not apply to alternative claims raised in the same action and (2) that dismissals on jurisdictional grounds are not judgments under § 2676. (Opp. Individual Defs.' Mot. Dismiss at 4–5).

#### a. Claims Raised in the Same Action

Plaintiffs argue that § 2676 only applies to subsequent actions based on allegations made in a previously dismissed action and not to alternative claims raised in the same action. (Opp. Individual Defs.' Mot. Dismiss at 4–5.) However, the Ninth Circuit has applied § 2676 to hold that a judgment on an FTCA claim bars recovery on a *Bivens* claim in the same action. *Arevalo v. Woods,* 811 F.2d 487, 490 (9th Cir.1987). In *Arevalo,* a district court entered judgment in favor of the plaintiff on two claims arising out of the same event: an FTCA claim against the United States and a *Bivens* claim against an Immigration and Naturalization Service investigator. 811 F.2d at 488. The Ninth Circuit held that the FTCA judgment barred recovery under *Bivens* and reversed the *Bivens* judgment against the investigator. *Id.* Applying *Arevalo* to the facts of this case, the FTCA's judgment bar precludes plaintiffs' *Bivens* claim even though both claims were raised in the same action.

#### b. Dismissals on Jurisdictional Grounds

Plaintiffs also maintain that the FTCA's judgment bar does not apply where "FTCA claims are not dismissed on the merits, but rather on jurisdictional grounds," relying on *Pesnell v. Arsenault,* 543 F.3d 1038 (9th Cir.2008) (Opp. Individual Defs.' Mot. Dismiss at 5).

However, the Ninth Circuit has interpreted the FTCA's judgment bar to preclude *Bivens* claims where a dismissal of a previous FTCA claim was upheld based on lack of subject matter jurisdiction. *Gasho v. United States*, 39 F.3d 1420, 1436–38 (9th Cir.1994). The *Gasho* court applied § 2676 in affirming the dismissal of *Bivens* claims against Customs Service agents after a related FTCA claim against the government had been dismissed. *Id.* Although the district court had dismissed the *Gasho* plaintiffs' FTCA abuse of process claim under Rule 12(b)(6), the Ninth Circuit upheld the dismissal on the alternative grounds that the claim was barred under an exception to the FTCA's waiver of sovereign immunity. *Id.* at 1436. Although lack of subject matter jurisdiction was the basis on which the FTCA judgment was upheld, the Ninth Circuit nevertheless found related *Bivens* claims to be precluded. *Id.* at 1437. The court held that "*any* FTCA judgment, regardless of its outcome, bars a subsequent *Bivens* action on the same conduct that was at issue in the prior judgment." *Id.* (emphasis in original).

Where *Bivens* claims are not based on the same allegations that formed the basis of a dismissed FTCA claim, by contrast, such *Bivens* claims are not barred. In *Pesnell,* the plaintiff had previously brought an action against the United States and various federal agencies pursuant to the FTCA. 543 F.3d at 1040–41. The FTCA claims were dismissed for lack of subject matter jurisdiction. *Id.* at 1041. In a subsequent action, the plaintiff then brought related *Bivens* claims and federal and state civil Racketeer Influenced and Corrupt Organizations Act ("RICO") claims against four federal employees. *Id.* The *Pesnell* court held that § 2676 barred the plaintiff from proceeding on the same factual allegations made in the dismissed FTCA claims. *Id.* at 1041–42. However, to the extent that the *Bivens* and RICO claims arose out of allegations not raised in the previous action, the plaintiff could proceed because *Bivens* and RICO claims are not encompassed within the subject matter jurisdiction authorized by § 1346(b), and thus the claims were "not foreclosed by the statutory bar of § 2676," which applies only to claims brought under § 1346(b). *Id.* at 1041.

■ Under § 2676 as interpreted in *Pesnell,* a *Bivens* action related to a previously dismissed FTCA claim may proceed only to the extent that it arises out of factual allegations different than those raised in the FTCA claim. Consequently, in order to proceed with their *Bivens* claim, plaintiffs must not only allege action by defendants Cottini and Heywood for which relief is unavailable pursuant to the APA, they must also plead only factual allegations not previously raised by their FTCA claims.

Because the allegations in plaintiffs' *Bivens* claim are the same allegations raised in their previously dismissed FTCA claims, as well as in their current APA claims, defendants' Motion to Dismiss plaintiffs' thirteenth claim for relief is GRANTED with leave to amend.

## CONCLUSION

For the foregoing reasons, defendants' motions to dismiss are GRANTED in part and DENIED in part.

(1) Defendants' motion to dismiss plaintiffs' first claim for relief is GRANTED with leave to amend.

(2) Defendants' motion to dismiss plaintiffs' second claim for relief is GRANTED with leave to amend.

(3) Defendants' motion to dismiss plaintiffs' third claim for relief is GRANTED with leave to amend.

(4) Defendants' motion to dismiss plaintiffs' fourth claim for relief is GRANTED with leave to amend.

(5) Defendants' motion to dismiss plaintiffs' fifth claim for relief is DENIED as to the allegation that the USFS violated the NHPA by constructing a bike trail and dirt bike ramp without engaging in required public consultation, and GRANTED with leave to amend as to all other allegations.

(6) Defendants' motion to dismiss plaintiffs' sixth claim for relief is GRANTED with leave to amend.

(7) Defendants' motion to dismiss plaintiffs' seventh claim for relief is GRANTED with leave to amend.

(8) Defendants' motion to dismiss plaintiffs' eighth claim for relief is GRANTED with leave to amend.

(9) Defendants' motion to dismiss plaintiffs' ninth claim for relief is GRANTED without leave to amend.

(10) Defendants' motion to dismiss plaintiffs' tenth claim for relief is GRANTED without leave to amend as plaintiffs' AIRFA claim and with leave to amend as to plaintiffs' RFRA claim.

(11) Defendants' motion to dismiss plaintiffs' eleventh claim for relief is GRANTED without leave to amend.

(12) Defendants' motion to dismiss plaintiffs' twelfth claim for relief is GRANTED without leave to amend.

(13) Defendants' motion to dismiss plaintiffs' thirteenth claim for relief is GRANTED with leave to amend.

Plaintiffs are granted fifteen (15) days from the date of this order to file an amended complaint in accordance with this order. Defendants are granted thirty (30) days from the date of service of plaintiffs' amended complaint to file a response thereto.

IT IS SO ORDERED.